case of the morning, Loretta Tutein et al. v. Insite Towers et al. Good morning. May it please the Court, I am Key Walker and I represent the appellants in this matter. At this time, I request that three minutes be reserved for rebuttal. Getting straight into the crux of the issue, the lower court failed to address one of the key arguments made by appellants, which is that the exhaustion principles do not apply to this case such that the appellants were required to exhaust any type of administrative remedy. What the Court did address... So why do they not apply? They don't apply because the policy upon which the exhaustion principles are based are inapplicable here. When you look at the Third Circuit precedent, exhaustion principles apply when you want to avoid piecemeal litigation of an issue or interrupting the administrative process. They also apply when you want to defer to an agency's expertise. Does it matter that your claim is based on constitutional principles? It matters that the claim is based on constitutional principles as well as tort law principles. But isn't the real problem here that there was no hearing? And isn't that, is that what you're seeking? Aren't you seeking that you have the opportunity to have a hearing that should have been held? That is the real problem. The real problem is that there was no evidentiary hearing. Okay, so who best to conduct such an evidentiary hearing? The District Court, which is why this should be remanded within... The District Court doesn't do that. The District Court doesn't hold agency hearings, does it? Well, when you inquired about the hearing, I assumed you were referring to the District Court. As far as the agency hearing, an agency hearing would not be useful in this case. And the principles that would require an agency hearing would not apply because what... But you're saying that this shouldn't have happened without a hearing, correct? That there was a hearing requirement in place as of December 28th, correct? And when that permit application was filed on January 12th, instead of stamping the permit and saying, yes, granted, they should have held a hearing. As from the hearing, it would have been decided whether this tower should stay or should be constructed or not, correct? Correct, only if the appellants had the opportunity to appeal prior to the 30-day expiration and only if the tower had not gone up within days of the permit being posted. Arguably, you had the right to appeal within 30 days of notice of the order. That's what the regulations provide, so you could have appealed anyway. Which would have been futile in this case because the tower already went up. Well, but how about activation? It hasn't been activated, has it? It hasn't been activated. So you could get that, you could have them say there shall be no activation. And under the regulations, it's six months. If it's not activated, they could require it to be removed, could they not? But the issue of activation does not come into play for the Board of Land Use Appeals under Section 295. The Board of Land Use Appeals has the jurisdiction to review the actual building permit, not the electrical permit. Does the Board have the authority to say this permit should never have been granted, therefore the construction of the tower proceeded under an illegal premise, therefore you have to remove the tower? Is that within the authority of the Board? That is not within the authority of the Board. Now, what is key here... They can modify what was done, and so can't they modify and say it should not have been done? They can modify and say the permit should not have been issued without due process being followed as enacted in the new statute, but they cannot remove the tower. The Board conceded that the permit should never have been granted. The commissioner of the agency conceded that it should not have been granted. If you had appealed the case, you would have won, apparently, just based on the Board's representation. Yes, but it would not have rendered the constitutional claims or the tort law claims moot. What's important here is what the Third Circuit held in Susquehanna, which is... May I ask you this? The complaints of the plaintiff relate to the presence of a tower. They're basically saying this tower has lowered my property values, it's ugly, there's a light that shines off of it, and it causes my glare, it hums, and I'm afraid for my health because of the sound that it makes. You're seeking damages for these plaintiffs. Wouldn't the quantum of damages be affected by whether that tower remains or goes? It would, but that would have been a decision for the district court and not for the Board of Land Use Appeals because the Board of Land Use Appeals does not have that authority. Just thinking about that, the district court has authority, doesn't it, to say, I'm referring this case back to the Board of Land Use for further proceedings? Right, but all that would have been referred was whether the permit should have been issued in the first place. What happened in this case is once the permit... You're content with the tower staying where it is and you just want to go back for personal injury damage, for damages. No, not at all. What I'm saying is that the Board of Land Use Appeals does not, any decision that they made, even if it was in the favor of the appellant such that the permit should not have been issued, would not have rendered moot the nuisance claims, would not have rendered moot the constitutional law claims. Let me ask you this. If a hearing had been held, let's assume we go back to what happened here, and a hearing was held, and as a result of the hearing, it was determined that the tower was your client's lost at the hearing because weighing all the pros and cons of the neighbors, which, I mean, these regulations say you give certified notice to all the neighbors, there's a hearing, and if that hearing had been held and it was determined that the tower should go forward, your clients would have no claims, wouldn't they? That's not true. A nuisance claim can still proceed even if there is a validly issued permit, and what's important about the Board of Land Use Appeals is that you're only reviewing the decision of the agency. Let's not forget that we're also suing the developers in this case. There is no remedy against the developers for the construction that already occurred within the Board of Land Use Appeals. How can the developers be liable if they have valid permits from the Board? Because they... Again, this is a hypothetical, but assuming that permits are granted, how can they be liable? They can be liable for how the construction was handled as far as the dust, as far as the glare from the tower. They can also be liable once the tower is activated for any noise disturbances and, to some extent, even RF emission that may occur after the tower is activated. But what's important here is that the principles that are the policy that supports exhaustion of administrative remedies do not apply here because the nature of the permit is to be adopted within days of the permit's... Judge Greenaway has a question, I believe. Yes, Judge Greenaway? Sorry, how do you work around Lavalie, or how do you pronounce it? Lavalie? Lavalie. First of all, Lavalie actually has, contains a distinction which supports the appellate case. When you look at the Lavalie opinion, there is a distinction at page 621 which reads that this is, that is different from the situation where a person can begin an immediate action under section 913B to restrain a violation of the act or to compel the performance of duties the act specifically imposes. There are a couple of things with the Lavalie opinion. One is it's addressing the CZM statute, which is completely different from the Board of Land Use Appeals statute that is the subject of this litigation. The CZM statute speaks to going straight to court for relief or exhausting your remedies before the agency, and it draws a distinction between merely seeking to modify or revoke a permit as opposed to seeking injunctive or any other relief under law. And it draws a distinction at that page. So... Fire exhaustion? Excuse me? I thought the principle that it stood for was that exhaustion was required here. Exhaustion is required in limited circumstances where you're seeking to revoke or modify an actual permit, not when you're seeking injunctive relief to undo something or to stop something from occurring. What's key in this case is that the tower was constructed within days of the issues being... of the permits being posted. Had the permits been posted when they were supposed to be posted, then it would have been easy for the appellants to go to the Board of Land Use Appeals to seek revocation of the permit. Could you succinctly state how... what the district court said that was wrong? What the district court said that was wrong was, one, it never addressed the argument that the exhaustion principles do not apply to this case. It did not follow the analysis in Susquehanna that required it to look at the statutory scheme and apply that statutory scheme to each and every single count of the complaint, which consisted of only constitutional law and common law claims. What it did is it went straight to the three exceptions and found that none of them applied without addressing the first argument. Really what it said was that this was... this would be a retroactive application of the is what the district court said. Is this right or wrong? It's wrong. Okay, how is it wrong? It's wrong for two reasons. One, we argued that it wasn't a renewal permit because the permit had expired within 120 days and that permit was issued in 2008. And the regulations have no... do not distinguish between renewal, do they? There's no distinction. Okay. And this would have been a new permit anyway. Okay. And secondly, the commissioner acknowledged that they should have followed the procedures and in a letter to the developer told them that they were required to follow the procedures. So the findings of facts that supported the court's conclusion were also wrong. All right. Is the essence of your argument that that complaint should never have been issued, the renewal complaint should never have been issued, and you didn't have an opportunity to appeal that decision? Is that... The renewal permit? Yes. Correct. It should never have been issued and you didn't know about it so you couldn't appeal it and now it's too late. Right. Due process was violated on both ends, prior to the issuance and afterwards because the tower went up within days of the permit being posted. Did you have personal injury claims present before the district court when the district court concluded that you should have exhausted your remedies? Yes. There's emotional distress claims. There's claim for negligent infliction of emotional distress and intentional infliction of emotional distress. And there's actual factual allegations that at least one of the appellants is suffering from anxiety as a result of this tower being constructed. What property right was violated here? The property right that was violated is found under the 14th Amendment. Specifically the plaintiff, the appellants are arguing that there's loss of value to their property. There's when... That support due process? It doesn't... If you're talking substantive due process, you're talking substantive or procedural? Well, we argued both. And what the court found when it denied the claim under the procedural due process grounds was that because we failed to go to Board of Land Use Appeals, that basically killed our procedural due process claim. But the court never once addressed the argument that the exhaustion principles do not apply to this case because the claims are not claims that can be resolved in the Board of Land Use Appeals. All right. Thank you. Thank you. We can view our vote. Council? Good morning, Your Honors. A.J. Stone from the firm of Bolt & Nagy, P.C. on behalf of Appli Insight Towers, LLC. Your Honors, just to jump right in real quick with respect to the remedial powers of the Board of Land Use Appeals. The Board of Land Use Appeals, by statute, when dealing with an appeal from DPNR, has the same enforcement powers as the commissioner of DPNR does. So if we send this to, if we affirm, it goes to the agency and they can require this tower to be taken down? Absolutely, Your Honor. Now, you, presumably, are going to argue that Judge Lewis was correct in saying that there's a retroactive, there's no retroactive application when this was an 08 permit? Correct, Your Honor. How can that be? The regulations apply to a permit. There's no distinction with a renewal, and a permit was sought in an application, and when that occurs under the December 28 regs, there needs to be a hearing. How can we uphold what Judge Lewis said? What reasoning supports that? I think you can address that by looking at the timeline in 2008. Insight received, Insight was permitted to build the tower. That was in October. The final permit came in like October. Which would have expired if not constructed within 360 days, isn't that correct? Ah, but there was a moratorium. Moratorium on construction, but the moratorium doesn't say that permits remain in effect during a moratorium, does it? I believe that that's the purpose of a moratorium, is to freeze matters in place as they are. That they could not begin the construction of the tower, but that did not obviate the permits themselves. Well, but then they had to reapply, so it doesn't, I mean, if you didn't have to reapply then I would agree with your view as to what a moratorium is, but they were, I mean, no one's contending they didn't have to reapply, so obviously your initial permit wasn't any good anymore. But they were reapplying under the 2008 regime, under the 2008 rubric. They were? Why isn't that? They were told that they had to comply with all the new regs. They were told they had to comply with the new regs as, and the record testimony in the court below, the regs that they had to comply with had to deal with construction. That was the intent of the Commissioner of the Department of Planning and Natural Resources. DPNR was not requiring them to go back and hold an entire, submit an entirely new application under the new regulations. Had they, had the Commissioner required that? Where is that clear? I thought that's exactly what they were told they had to do in the letter. No. What they were told to do in the letter was to comply, first of all they had to take the tower down from 100 feet to 75 feet and comply with the other regulations then pending. But that's different from saying, I'm sorry, Your Honor. Well the regulations that are in effect as of December 28th say, when permit applications are filed, hearings must be held. Isn't that pretty clear in the regs? When they were promulgated, yes. So that when an application was filed on January 12th, should not a hearing have been held? I think that's an excellent question that should have been addressed to the Board of Land Use Appeals. Because the Board of Land Use Appeals, I believe, would have had the authority to look at that and make the determination which regulations were in place. Were the regulations actually in force at the time or not? That's the kind of decision that should be made at the local level. How would they not be in force? I mean, we're supposed to construe what we see in these regulations and by their own language they've been promulgated. But when you look at a retroactive application requiring Insight to go back and reapply for permits that have already been in effect, and were never questioned, the validity of the initial permits were not in question at the time of the moratorium. Why were those permits still in effect when the moratorium solely affected construction? In other words, it didn't preserve existing permits indefinitely. The moratorium's function was simply to stop construction until we can get a better look at the statute. That would stop. And adopt regulations? And adopt regulations. And again, I believe that that is a question that the Board of Land Use Appeals should have been asked. The appellants could have taken that to the blue and said, and made the exact argument that Your Honors are making right now. And the BLUA is in the better position to interpret the regulations, to look at the regulations from an administrative standpoint and say, yes, they were intended to be applicable retroactively. Yes. The way that we do land permits in the Virgin Islands. What does Virgin Islands law say about an entity that proceeds on the basis of an improper or illegally issued permit? If they proceed on the basis of an improperly issued permit, the commissioner will order them to remedy it, whatever that remedy might be. And that can be found at 29 BIC 312. What does remedy it mean? Depending on, I think it depends on the circumstances. What here would remedy it, assuming we find it was illegally issued? And the Board. Pardon? Take it down? The Board said that the permit was improperly issued. We should not have issued that permit. The DPNR commissioner at a public hearing at, you know, that without, in a public forum. I'm referring, yeah, I refer to the Board, which is the appellate aspect of the system, I guess, which I have in place, but it's the, it's the commission, the Board commissioner. No, Your Honor, it's the commissioner of DPNR. Okay. DPNR. Public Planning and Natural Resources. Correct, Your Honor. So they, but, but that's where you get the permit in the first instance. Correct, Your Honor. And they said, we issued this permit, we, out of our office, and we shouldn't have issued it. It's wrong. That's what the commissioner said. What, what did she say? The commissioner said that this was an anomaly. This is an exception. This was a situation where inside, the moratorium was supposed to last six months. It lasted for three and a half years. I read somewhere that she conceded that this shouldn't have been issued. No. No, Your Honor. We would, we would, we would dispute that. She didn't, she never conceded that it would be issued. What, what the record below says is she indicated that it was an anomaly and the spin, the characterization that the appellants have chosen to give, it has, is that it should never have been issued. Let me clarify that. I think what the, what the, what the commissioner was saying was that the, the circumstances for this, for my client, were unique because they were caught on the cusp of, of the, in the moratorium. They had valid permits. Are your clients in sight? Yes, Your Honor. What about the lack of notice here? The lack of notice with respect to? The fact that the tower went up, like the property was posted well after it should have been posted. It's like in the dead of night, this thing went up like overnight. And I think that that question again, needs to be taken to the Board of Land Use Appeals. Was this done properly? Did this happen? Did this happen according to Hoyle or is this a situation where remediation needs to take effect? Do you think the plaintiffs have a right to go back to the board at this point? At this point? I think that's a question for the Board of Land Use Appeals, Your Honor. I hate to seem like I'm being cagey about it. I don't think they do. I think that they had 30 days from notice as Your Honor, as Judge McDowell indicated. They didn't really have notice, did they? I mean, this thing was already up. Everything was said and done before they really realized what was going on. They still have remediation. They can still go back to, assuming BLUA will hear their appeal, they can still go back. And BLUA has all the powers of the commissioner in enforcement. But when they go back, you're going to say they don't have any right to be there. Absolutely, Your Honor. Aren't we just, and eventually it's going to end up in court. So it's here now. It may well be, but if, for, but there is a, because I argue, I mean, I wish I had that kind of influence of the Board of Land Use Appeals that what I say, they will take to the bank. But it's entirely possible. The Board of Land Use Appeals can grant variances, it has power to grant variances. It has the power to hear matters, the appeals, and I'm blanking on the exact language. But I can pull it up here, Your Honors. When it is claimed that there are special extraordinary circumstances in the case which justify variances from the requirements established in this code. The Board of Land Use Appeals can take this unique, admittedly, arguably unique situation and they can, they can listen to the plaintiffs. Your argument is going to be they should have exhausted the remedies a long time ago. That's going to be my argument. Yes, Your Honor. But that doesn't mean that the BLUA is going to listen to me. How about Ms. Walker's argument that she is claiming constitutional remedies and there's no exhaustion requirement when you proceed on the basis of a constitutional. I believe that's putting the cart before the horse because if the, if she prevails at the BLUA level. Well, part of the issue is due process, meaning we did not get the notice that we should have gotten. And if there is remediation and the tower is told to be taken down because they did not get notice or that the tower was improperly constructed or what have you, then they are left without an injury because the tower. How about if we were to rule that exhaustion is not required in the case of a constitutional issue? Would that be binding on the board? I'm sorry. Repeat that. Would that, if we were to rule that exhaustion is not required by plaintiffs in this case because of the chronology of events, would that be binding on the board? Would that be binding on the board? I suppose it would be, actually. If the... Answered my own question. I have a hard time seeing where an order by this court with, with respect to the board. Do you dispute the application of the constitution here? Absolutely not. What happened? Pardon? Absolutely not, Your Honor. I don't dispute that. My client does not dispute that. So there is a procedural and substantive due process claim stated? There is. That can be remediated if they receive, if the, if the, if BLUA sides with the appellants in this matter, then where's their injury? It's gone. But if there is a constitutional claim, they really don't have to exhaust, do they? If there's a, they have to at least take it, again, the, what they're saying is their constitutional claim is that we didn't get due process. Okay. They didn't attempt to get due process in this matter. They never raised their hand and said, hey, we were denied due process under the administrative regime that's available. Due process is getting notice. That you can have a hearing. That you can have a hearing and you, you can present witnesses, et cetera. But they had no notice of a hearing and therefore could not participate in the hearing. In 2000, in 2008, there was no requirement for a hearing notice because... We're talking about January 12th, that permit application is filed. Then what? Okay. If we're going to 2012, we're going to, oh, I'm sorry, to the 2012 renewal permit being issued. Okay. You say it's a renewal permit. I say it's a permit. Fair enough. Your Honor, the, if there is, if there's a requirement that there is a, that the court finds that the regulations are retroactive with respect to, with respect to already permitted towers. Okay. Well, let's say we find that the moratorium was a moratorium on construction, as Judge Fuentes noted, and the moratorium did not provide for all permits having been issued prior to that date being deemed still effective. So we're saying that the, let's assume the original permit expired so that a new permit was required. Then what, what should have happened January, January 12th? What should have happened? If that's the way the court goes, then the, you go to BLUA and you say, you didn't have your hearing that we were supposed to. You would say the, you would, you would alert the, you would. Don't you, I mean, as a district court, wouldn't you take into account whether the agency has abided by its own rules and deciding whether you need, we're going to send somebody back to the agency? I think in this point, the court did look at that and said there was no retroactivity. The court looked at it and said that the, the rules that were in place, the newly promulgated rules did not take effect. And if I may just segue just slightly to- Were not in effect because this was a renewal? Were not in effect because- All the renewal permits? Correct, Your Honor. And if I can segue, I mean, we get into a question that you asked my opponent earlier in terms of what the property interest in here is. If you're going to get into a substantive or a procedural due process analysis, you have to identify a property interest. And the property, there's no doubt under Roth v. Board of Regents that a landowner has a property interest in his or her own property. Use and enjoyment of his or her own property is certainly protected by the Constitution. But you don't have that situation here. Plot number 72, which is where the tower was constructed, none of these appellants have any property interest with respect to an easement. So that's why I asked you whether you conceded there was procedural substantive due process claim. You are now saying you don't concede that because you say there's no property interest. I misunderstood. I was conceding that there was a claim. I concede that they made a claim. Okay. But you're not conceding that it's- Yes, Your Honor. But I didn't say, I'm sorry, I missed your argument. We say they have no property interest? They have no property interest in plot number 72, which is where the tower was constructed. Well, what if my house is right next to plot 72? And what if the value of my house is diminished substantially because there's a tower in my house? The circuit has never found that the district court, under Virgin Islands law, there's never been a determination that loss of property value constitutes a property interest. It's almost intuitive. I mean, if somebody all of a sudden, over a matter of two days, two or three days, puts a 75-foot tower right next to your backyard, you say that I have the value of my property has not diminished? If you look at the case of, and this is a district court case, Chris v. Fayette County, which this court affirmed, the district court found just that. When you have a diminution in property value, that's not a cognizable property interest. Is it? Well, I don't know. I'm not sure about that, but is it a matter of proofs? I mean, what if they get an appraisal day one, and then after the tower, they get a second appraisal, and it shows a reduction in value to $200,000 in value? I think if you get into that situation... Your argument would be, but they have no right to a property interest. Otherwise, you would be giving, as a policy matter, the court would be giving neighbors a veto on construction. You'd be giving them a property interest that heretofore has never been identified by the courts of the Virgin Islands or the Third Circuit. I see my time is up, Your Honors. May I summarize? Yes. Thank you, Your Honors. Your Honors, in the case of Eichenlau versus Township of Indiana, the court said that 14th Amendment due process claims should not turn land use dispute claims into, turn the federal courts into super zoning boards. And for this reason, Insight asked the court to affirm the decision of the District Court of the Virgin Islands in dismissing this matter, and allow the plaintiffs to go back to seek out their... Exhaust their administrative remedies, if any. Thank you, Your Honors. Ms. Walker, rebuttal? Yes, Your Honors. It's important to keep in mind the standard of review here, which is that all facts must be viewed in the light most favorable to the appellants. And it's the facts as set forth by the appellants, who were the plaintiffs below, that sets the tone for this case. When you look at the verified complaint, the plaintiffs, the appellants laid out in the verified complaint that one, the commissioner of DPNR admitted that a mistake was made, and that this permit should not have been issued. But why shouldn't we, I mean, this is all about exhaustion. It's not about whether you have claims or not. It's about exhaustion. Why shouldn't we let the agency have the first crack at this? And if they don't get it right, then it goes to the district court, does it not? Because the agency does not have the expertise, nor does it have the tools to address the common law claims. But it has the power, does it not? It only has the power to revoke or modify the permit, even if we were to take... But it does have that power. And if it has that power, and if it does that, then aren't you in much better position when you then come to district court and say, we have damages because the BLUA has already said that they did this improperly. I don't... Why are you fighting this? The standard is not that it's in a much better position, and when you look at Section 295 with regards to the Board of Land Use Appeals, you can only, you go to the district court on a petition for writ of review. The Board of Land Use Appeals cannot put a figure on Ms. Tutine's anxiety. They cannot pick a... How about this possibility? The entire case goes back to the district court with direction to refer the issue respecting the construction of the tower to the Board of Land Use Appeals. Just that issue. Retaining the personal injury issues with the district court. Once that zoning issue or the tower issue is resolved, you go back to the district court for your personal injury claims. I... Well, you know, that's when you... It's not the best scenario from your standpoint, but it is... When you go to the BLUA and they say, we don't have the power to do... Say, in fact, you know, we can only do so much, then you've got your belt and suspenders, don't you? Well, no, you don't, because that's when we start getting into the absurd result of having piecemeal litigation. We're going to send... No, it's just two things. It's the issue of the tower goes to the board. The court retains all personal injury claims, and then regardless of what happens with the board, you can still go back to the district court. It sounds kind of Solomonic. Right, but the nuisance claim does not depend on how the Board of Land Use Appeals treats the permits. The nuisance claims and all of the common law tort claims proceed regardless of whether there's a finding by the agency that there's a problem with the permit. And I would go as far as to say that, Judge Fuentes, you said something similar in a recent opinion involving Bell and Chanswick. The statutory common law claims set a different standard than what is set in the statutory scheme that governs the BLUA or any of these building permits. So the standard is not something that the Board of Land Use Appeals has the expertise or the tools to address. But in your complaint, you complain, you want them to stop the construction and the activation. So I mean, there are aspects of relief that really are BLUA related, and then there are others such as nuisance that aren't. So again, I'm not sure why Judge Fuentes' Solomonic proposal doesn't work. Because I don't concede that the Board of Land Use Appeals has the injunctive authority to say, take this tower down. When you look closely... But if they were to send it there and then they say we don't have that power, then you're still in district court. But we don't need the agency to say that they don't have that power. The district court can say you don't have that power, and the district court should have done that by simply looking at Section 295, which says you can challenge the material that we use for this. You can challenge the... I'm sorry, I forget the language, but it goes on into subsection C of Section 295 when it goes on to say the decision of the Board of Land Use Appeals is effective for X amount of days after we say okay to the permit. For X amount of days if you don't construct... It's not effective after 360 days if you don't complete construction. When you look at the effectiveness of a Board of Land Use Appeals decision, it doesn't in any way contemplate what the plaintiffs are asking here for the court to do, which is to grant injunctive relief. A quick question, just to clarify the record for... I wanted to ask you about the status of the Department of Planning and Natural Resources because apparently they didn't join in the motion here in Inside Tower's motion to dismiss. And I have a decision here which doesn't refer to them at all except in the caption. Could you clarify that? Are they still in the case? Well, I have the district court decision. The government is still in the case, it just hasn't been litigating it. It's been writing... Department of Planning and Natural Resources. ...of the developer. What are they doing, laying on the sidelines? No, they are writing the coattails of the developer. They have completely abandoned their regulatory duty here and are basically saying we're so sorry, Insight, for waiting, for issuing this moratorium and having you wait. So we're just going to go ahead and give you this permit. And now that we've been sued, we're just going to lie down and write on your coattails. That's what I'm asking. Are they part of this motion? They're part of this action. They just have not actively defended it because they're allowing Insight to defend the permit. Okay. Judge Greenaway? Yes. Here's what I don't understand and I'd like you to help me with. I presume that Bloor, if the case went to them, could revoke the permit and could demand that the tower be removed. Is that correct? No. They could revoke the permit, but I don't see anywhere in the statute that they have the legislative authority to have the tower taken down. But they may believe that they do, that the modification, they can modify. And maybe modification to them means we can undo what was done. We don't know. It doesn't say that anywhere in the statute. And an agency that's created by statute... Judge Greenaway. I'm sorry. There's nothing in the statute preventing them from giving you all of the relief regarding the tower that you seek. I understand about personal injury. Let's put that aside. There's nothing in the statute that would preclude Bloor from giving you all the relief you seek regarding the tower. I respectfully disagree with that because the Board of Land Use Appeals is a creature of statute and it has only the authority that is expressly granted to it. There's nothing in the statute that says Board of Land Use Appeals has injunctive authority. We don't know what modify means. It's allowed to modify. Judge Greenaway's question was, is there anything in the statute that prevents it from ordering the removal of the tower? There's nothing in the statute that prevents it, but that's not the standard. The standard is what did the legislature give to the Board of Land Use Appeals by way of authority. All right. Thank you. Judge Greenaway, are you all right? Yes. Thank you so much. Thank you. Thank you, Counselor. Case is well argued. We'll take it under advisement and call our third case of the morning.